UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MARCUS BERRY | CIVIL ACTION |
| VERSUS | |
| LEON ROBERSON, ET AL. | NO.: 13-00145-BAJ-RLB |

## RULING AND ORDER

Before the Court is the **Motion for New Trial, Or Alternatively Motion for Remittitur (Doc. 47)**, filed by Defendants Leon Roberson and Auto-Owners Insurance Company (collectively, "Defendants"), seeking an order from this Court under Federal Rule of Civil Procedure ("Rule") 59 for a new trial or, alternatively, for remittitur. Plaintiff Marcus Berry opposes this motion and, further, moves to strike from the record an exhibit attached to Defendants' motion. (*See* Doc. 51).

I. BACKGROUND

Plaintiff filed the instant personal injury action in the state court of the 19th Judicial District Court for the Parish of East Baton Rouge, which was removed to this Court. (*See* Doc. 1). The matter was tried before a seven-member jury from September 15–16, 2014. Judgment was entered on September 19, 2014 in favor of Plaintiff and against Defendants in the amount of $1,290,000.00. (Doc. 44). Defendants filed the instant motion on October 17, 2014. (Doc. 47). The motion is timely filed. *See* Fed. R. Civ. P. 59(b) ("A motion for a new trial must be filed no later than 28 days after the entry of judgment.").

## II. DISCUSSION

### A. Motion for New Trial

Rule 59(a) provides that a new trial may be granted "on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). Although Rule 59(a) does not list specific grounds for a new trial, the U.S. Court of Appeals for the Fifth Circuit has held that a new trial may be granted if "the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted). However, it is within the "sound discretion of the trial court" to determine whether to grant or deny a motion for new trial. *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

Defendants argue that, here, a new trial is warranted because of alleged juror misconduct. Specifically, Defendants contend that Juror Number Ten, Andrew B. Ezell, who would become the foreman of the jury, did not disclose during voir dire that he is "in fact quite biased towards insurance companies." (Doc. 47-3 at p. 3). In support of their argument, Defendants highlight that a page on the website of Mr. Ezell's law practice, Ezell Law Firm, is dedicated to personal injury cases with a tab specifically directed to those who have been involved in car accidents. Defendants quote text from the website, including: "The biggest mistake most people make is to see insurance companies as trusted friends. . . . With all due respect, insurance companies are businesses and they want to maximize their own bottom line, not

2

yours." (Doc. 47-1 at p. 3). During voir dire, when the Court asked if any potential juror would have a problem or would refuse to "decide this case solely on the basis of the evidence that is introduced to you during the course of this trial, along with the instructions [provided] at the end of the trial," Mr. Ezell did not raise his hand. (Tr. I at 77:14–78:2). Defendants assert that Mr. Ezell was "not completely forthright or accurate" when answering the Court's questions about his law practice or his ability to serve as an impartial juror. (Doc. 47-3 at pp. 3–4).

"In order to obtain a new trial, the moving party must demonstrate that a juror failed to answer a material voir dire question honestly, and that a correct response would have been a valid basis for a challenge for cause." *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001). The prejudice of a juror must be proven by the movant by a preponderance of the credible evidence. *See United States v. Cashio*, 420 F.2d 1132, 1135–36 (5th Cir. 1969). Here Defendants have not shown that Mr. Ezell failed to answer a material voir dire question honestly. When asked about his occupation, Mr. Ezell's colloquy with the Court was as follows:

| | |
|---|---|
| BY THE COURT: | What do you do? |
| BY MR. EZELL: | I am an attorney. |
| . . . | |
| BY THE COURT: | . . . What kind of law do you practice, I should ask? |
| BY MR. EZELL: | I practice a lot of commercial and regulatory law. We also have general area of practice. |
| BY THE COURT: | And are you with a firm or do you have your own practice? |
| BY MR. EZELL: | I have my own law firm, Ezell Law Firm. |
| . . . | |

| | | |
|---|---|---|
| BY THE COURT: | | Okay. And do you practice personal injury law? |
| BY MR. EZELL: | | To some extent, yes, we do. |
| BY THE COURT: | | On the plaintiff side or the defense side or both? |
| BY MR. EZELL: | | Typically, it's on the plaintiff's side. |
| BY THE COURT: | | And how long have you been practicing? |
| BY MR. EZELL: | | Thirty-nine (39) years. |

(Tr. I at 26:13–27:17). Defendants do not dispute that Mr. Ezell's responses to the Court's questions were factually accurate, but they argue that he was not forthright because he did not disclose his "unfettered bias against insurance companies," which they claim is established by the text on the Ezell Law Firm website.

The Court disagrees. This is not an instance of actual bias, where "a juror fails to answer a material question accurately because he is biased." *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001). The trial transcript reflects that Mr. Ezell honestly and accurately disclosed that he has his own law firm, which engages in personally injury law and typically represents plaintiffs in personal injury cases. Neither is this an instance of implied bias, which is only found in extreme circumstances—such as when a juror is employed by the prosecuting agency, is a close relative of a participant in the trial, or is involved in the transaction that is the subject of the trial. *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001) (*Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring)). The mere fact that Mr. Ezell has a firm that handles personal injury cases, among other practice areas, and promotes his legal services on the firm website does not rise to

the level of implied bias in a case where Mr. Ezell has no connection to the specific parties or transactions.

Defendants made no motion to strike Mr. Ezell from the venire for cause, nor did they attempt to use a peremptory challenge on Mr. Ezell. Defendants did not even request that the Court ask Mr. Ezell additional questions—as they did with another prospective juror, one Ms. Patricia Jacob. (*See* Tr. I at 132:3–136:5). "[I]t ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555 (1984) (reversing lower court's decision to entitle parties to new trial based on a juror's non-disclosure of certain information). Defendants were well-equipped to probe more deeply into Mr. Ezell's attitudes toward insurance companies or personal injury claims based on the information truthfully disclosed by Mr. Ezell in response to the Court's questions, but Defendants elected not to do so.

Nothing in the record or in Defendants' motion suggests that Mr. Ezell misrepresented or concealed material information in response to voir dire questioning, or did not otherwise faithfully discharge his duty as a juror to impartially evaluate the case on the basis of evidence introduced to the jury during the course of trial along with the instructions provided at the end of trial. Accordingly, Defendants' motion for a new trial on this basis is **DENIED**.

### B. Motion for Remittitur

Alternatively, Defendants move under Rule 59(e) to reduce the judgment awarded by the jury in this matter, an award totaling of $1,290,000.00.

The Fifth Circuit has held that in a diversity action, a district court "must apply a new trial or remittitur standard according to the state's law controlling jury awards for excessiveness or inadequacy.'" *Foradori v. Harris*, 523 F.3d 477, 497–98 (5th Cir. 2008) (*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996)). Accordingly, this Court reviews the jury verdict in light of Louisiana's additur/remittitur statute, La. C.C.P. art. 1814, which provides:

> If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the defendant as the case may be, as an alternative to a new trial, and is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case. If a remittitur or additur is entered, then the court shall reform the jury verdict or judgment in accordance therewith.

Further, the Court is guided by the principle, enunciated in Louisiana case law, that, "[i]n assessing general damages in cases of tort, much discretion is given the trier of fact." *Pritchett v. Martin*, 612 So. 2d 290, 292 (La. Ct. App. 1992). "[T]he jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence." *Davis v. Wal–Mart Stores, Inc.*, 774 So.2d 84, 93 (La. 2000) (*Engolia v. Allain*, 625 So. 2d 723, 729 (La. Ct. App. 1993)).

In the instant matter, the Jury Verdict Form reflects following breakout amounts of damages awarded:

$600,000     for past, present, and future physical pain and suffering;
$390,000     for past, present, and future medical expenses; and
$300,000     for past, present, and future loss of enjoyment of life.

(Doc. 41 at p. 2).[1]

### 1. Medical Expenses

First, Defendants argue that medical expenses award is excessive. Defendants do not dispute that past medical expenses claimed by Plaintiff were $38,961, but they contend that the remaining award covering future medical expenses—approximately $350,000—is speculative and unsupported by the evidence presented in this case. Specifically, Defendants claim that the estimated cost of future rhizotomies[2] for Plaintiff Berry is overvalued. To the contrary, the Court finds sufficient evidence in the trial record to support the jury's award for future medical expenses. Dr. Joseph Turnipseed, Plaintiff's pain management specialist who was qualified as an expert witness in the field of pain management, testified that the costs for one procedure, if not prepaid, run up to $8,720.[3] (Tr. I at 299:19–301:5). Moreover, Dr. Turnipseed testified that the rhizotomy procedure will need to be repeated periodically because the nerves regenerate. (Tr. I at 254:19–254:24). Although Dr. Turnipseed mentioned a medical study that followed subjects

---

[1] During the jury charge conference, no objection was voiced by either Plaintiff or Defendants to the jury charges or verdict form. (*See* Doc. 43 at p.2).

[2] A rhizotomy, also known as a neurotomy or radiofrequency ablation, is a medical procedure to burn the nerve as treatment for a facet joint injury. (*See* Tr. I at 163:23–164:16, 252:2–253:10).

[3] This amount is calculated by summing the physician fee ($2,000), surgery center fee ($6,220), and anesthesia fee ($500).

7

being treated with annual rhizotomies for seven years, he also testified that his clinical practice goes out to ten years and that he would continue to repeat rhizotomies for decades if they worked. (*See* Tr. I at 262:7–262:17, 274:20–275:8).

Dr. Turnipseed testified that he believes Plaintiff Berry will need some form of pain management for the rest of his life, and that future medical treatment will include both the rhizotomies and pain medication. (*See* Tr. I at 274:20–275:24). Dr. G. Randolph Rice, Plaintiff's expert in the field of economics, testified on the second day of trial as to his calculations of the net present value of all future rhizotomy costs for the remainder of Berry's life, which he estimated to be 46.07 years. (*See* Testimony of Dr. Rice, Trial 9/16/2014). Dr. Rice calculated the net present value of expenses, for annual procedures for the remainder of Berry's life, to be $351,053. (*See id.*). Moreover, the jury heard testimony from Dr. Turnipseed that a successful rhizotomy "normally lasts six months or better." (Tr. I at 291:8–291:9). Sufficient evidence was adduced at trial for the finder of fact to conclude that Berry might need rhizotomy procedures more often than once a year in the future.

Accordingly, the record adequately supports the jury's medical expenses award of $390,000, including medical expenses already incurred, when accounting for Dr. Turnipseed's testimony that rhizotomy procedures cost up to $8,720 each and could be performed with successful results as often as every six months for the remainder of Berry's life.

**2. General Damages**

Next, Defendants argue that the $900,000 award of general damages (physical pain and suffering, plus loss of enjoyment of life) is not justifiable based on the facts of this case and relevant jurisprudence.[4] Here, the jury did not find in its verdict that Plaintiff suffered from a pre-existing condition. (*See* Doc. 41 at p. 1). Accordingly, all injuries found by the jury to result from the February 15, 2012 collision were assessed against Defendants.

"General damages are those which may not be fixed with pecuniary exactitude; instead, they 'involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.'" *Duncan v. Kansas City S. Ry. Co.*, 773 So.2d 670, 682 (La. 2000) (*Keeth v. Dept. of Pub. Safety & Transp.*, 618 So.2d 1154, 1160 (La. Ct. App. 1993)). Damages to compensate for pain and suffering or loss of enjoyment of life cannot be quantified with precision. Accordingly, "[v]ast discretion is accorded the trier of fact in fixing general damage awards." *Id.* Before a trial court award may determine an award to be excessive, the Court "must look first, not to prior awards, but to the individual circumstances of the present case." *Reck v. Stevens*, 373 So.2d 498, 501 (La. 1979). "Awards may vary greatly according to the facts and circumstances in each case." *Bunch v. Gay*, 155 So. 2d 269, 270 (La. Ct. App. 1963).

---

[4] During summation, Plaintiff's counsel grouped together the two categories of general damages when advocating for pain and suffering damages and loss of enjoyment of life damages that would be commensurate to $50 a day for the remainder of Berry's life. (*See* Plaintiff's Summation, Trial 9/16/2014).

9

"The factors to be considered in assessing quantum of damages for pain and suffering are severity and duration." *LeBlanc v. Stevenson*, 770 So. 2d 766, 772 (La. 2000). As for his past, present, and future pain and suffering, Plaintiff Berry testified about the persistence and seriousness of his back injuries. He stated that it is uncomfortable for him to sit up straight. (Tr. I at 206:7–206:21). According to Berry, it is difficult for him to sleep because of his discomfort. (Tr. I at 221:6–221:12). He also testified that the rhizotomy procedure itself causes inflammation with lingering pain. (Tr. I at 217:3–217:8).

Regarding his past, present, and future loss of enjoyment of life, Berry described at trial the impairment of his social interaction and involvement due to his injuries. For example, he is unable to pick up or play with his four-year-old son, to help his father with chores, or to play sports with friends. (*See* Tr. I at 217:12–220:14). He experiences discomfort when sitting through church services with his mother. (*See* Tr. I at 218:7–218:15). Berry's girlfriend, Ms. Constance Newsome, testified that since the accident Berry has lost confidence, is no longer as outgoing as he was before the accident, and "mopes around" the home. (*See* Testimony of Ms. Newsome, Trial 9/16/2014).

The testimony reviewed above, in conjunction with the rest of the record, certainly reflects a diminishment in Berry's quality of life. The Court, however, does not find that any fair interpretation of the evidence supports the jury's $900,000 award for general damages, even while affording the jury great deference in its findings. No testimony was adduced at trial demonstrating that Berry's injuries

have severely affected his ability to independently perform basic life functions. After the collision and through trial, Berry has continued working as a cook at an offshore catering company. (*See* Tr. I at 191:2–191:20, 203:16–203:18). He testified that he has not missed any significant amount of work due to his injuries. (Tr. I at 229:7–229:11). Moreover, Berry testified that rhizotomy procedures were effective in decreasing pain, so much so that there were some days he did not even notice the pain. (*See* Tr. 214:12–214:15).

In response to Defendants' instant motion, Plaintiff Berry directs the Court to *Wendel v. Travelers Insurance Company*, wherein a Louisiana appellate court upheld a jury's total award of approximately $3.87 million to a plaintiff who suffered back and spinal injuries that Plaintiff Berry asserts are similar to those he suffered here. *See* 151 So.3d 828, 831 (La. Ct. App. 2014), *writ denied*, 158 So.3d 818 (La. 2015). However, a review of a breakdown of the *Wendel* jury award reveals that only $350,000 of the award was for pain and suffering, and only $50,000 for loss of enjoyment of life. *Id.* at 831. The Court is unaware of any judgment from a Louisiana court or a federal court in which an award comparable to $900,000 has been granted for injuries similar to those suffered by Berry.

Accordingly, the Court finds that the general damages award of $900,000 ($600,000 for pain and suffering, $300,000 for loss of enjoyment of life) is manifestly excessive. Therefore, the Court shall grant Defendants' motion for remittitur and shall reduce the award of general damages to the following:

| | |
|---|---|
| $250,000 | for past, present, and future physical pain and suffering; and |
| $150,000 | for past, present, and future loss of enjoyment of life.[5] |

Plaintiff Berry, who would be adversely affected by remittitur, has the right to reject the remittitur and elect to submit to a new trial. *See* La. C.C.P. art. 1814; *see also Miller v. Chicago Ins. Co.*, 320 So.2d 134, 136–37 (La. 1975). If Plaintiff rejects the remittitur, the Court shall grant a new trial solely on the issue of general damages.

### C. Motions to Strike and Sanction

To their instant motion, Defendants have attached, as Exhibit B, correspondence of a settlement offer signed by Plaintiff in the course of pre-trial settlement attempts between the parties. (*See* Doc. 47-2). Plaintiff Berry moves to strike the exhibit as inadmissible and, thus, improperly filed. Such evidence is inadmissible under both federal and state rules of evidence for the purpose of proving the amount of a disputed claim. *See* Fed. R. Evid. 408; La. C.E. art. 408. There are several important policy considerations underlying the inadmissibility of such evidence, including that parties are more likely engage in frank negotiations and are more willing to compromise when the contents of negotiations are kept confidential. Further, the Court finds that a settlement offer is not probative when determining the true value of Plaintiff's claim and therefore is not relevant under Federal Rule of Evidence 401. Accordingly, the Court shall order the exhibit stricken from the record.

---

[5] The award for medical expenses in the amount of $390,000 is not disturbed, as explained *supra*.

Berry also seeks sanctions against defense counsel for filing the exhibit. The Court, however, does not find that defense counsel's filing warrants a sanction, for the exhibit was never presented to the trier of fact and therefore could not have had any improper bearing on the jury's verdict.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for New Trial, Or Alternatively Motion for Remittitur (Doc. 47)** filed by Defendants Leon Roberson and Auto-Owners Insurance Company is **DENIED IN PART** and **GRANTED IN PART**. Specifically, Defendants' motion for a new trial based on juror misconduct is **DENIED**, while their motion for remittitur is **GRANTED**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the prior **Judgment (Doc. 44)** in this matter is **AMENDED**, such that judgment is **conditionally entered IN FAVOR OF** Plaintiff Marcus Berry and **AGAINST** Defendants Leon Roberson and Auto-Owners Insurance Company in the sum of **SEVEN HUNDRED NINETY THOUSAND ($790,000.00) DOLLARS**,[6] with interest from the date of entry of final judgment, and costs.

**IT IS FURTHER ORDERED** that Plaintiff Berry shall file in the record **within twenty-one (21) days** from the date of this Ruling and Order a written

---

[6] With remittitur, the revised division of damages is as follows:

| | |
|---|---|
| $250,000 | Past, present, and future physical pain and suffering |
| $390,000 | Past, present, and future medical expenses |
| $150,000 | Past, present, and future loss of enjoyment of life |
| **$790,000** | |

notice to the Court stating whether he accepts or rejects the foregoing remittitur. **If Plaintiff accepts the remittitur, final judgment in this matter, consistent with the findings herein, shall be rendered on the date of acceptance.** If Plaintiff rejects the remittitur, the case of Plaintiff Marcus Berry versus Defendants Leon Roberson and Auto-Owners Insurance Company will be set for a new trial on the issue of general damages.

**IT IS FURTHER ORDERED** that, considering the Court's conditional judgment herein which alters the original judgment in this matter, Plaintiff's **Motion to Alter or Amend Judgment to Add Interest (Doc. 48) is DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Document 47-2 in this matter is **STRICKEN** from the record.

Baton Rouge, Louisiana, this 28th day of April, 2015.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA